Case 5:19-cv-00036-MFU-JCH  Document 19  Filed 07/20/20  Page 1 of 13
Pageid#: 1162

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

7/20/2020

JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| SABRENA F.,[1] | ) |
|     Plaintiff, | )    Civil Action No. 5:19-cv-00036 |
| | ) |
| v. | )    REPORT & RECOMMENDATION |
| | ) |
| ANDREW M. SAUL, | )    By:    Joel C. Hoppe |
| Commissioner of Social Security | )          United States Magistrate Judge |
|     Defendant.[2] | ) |

    Plaintiff Sabrena F. asks this Court to review the Commissioner of Social Security's final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' filings, and the applicable law, I find that substantial evidence supports the Commissioner's denial of benefits. Accordingly, I respectfully recommend that the presiding District Judge affirm the decision.

I. Standard of Review

    The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Commissioner Saul is hereby substituted for the former Acting Commissioner, Nancy A. Berryhill, as the named defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

1

Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98–100 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 20 C.F.R. § 404.1505(a).[3] Social Security ALJs follow a five-step process to determine whether a

---

[3] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

Sabrena applied for DIB in June 2014, alleging she became disabled on March 13, 2014, from hepatitis C, left arm trauma, and an L1 and L2 burst fracture. Administrative Record ("R.") 183, 406–07, ECF No. 14. Sabrena was thirty-two years old, or a "younger person" under the regulations, when she allegedly became disabled. R. 183; 20 C.F.R. § 404.1563(c). Disability Determination Services ("DDS"), the state agency, denied her application initially that September, R. 182–90, and upon reconsideration in February 2015, R. 191–200. In November 2016, Sabrena appeared with counsel at an administrative hearing, the presiding ALJ postponed the hearing to obtain additional medical records. R. 104–09. On March 2, 2017, Sabrena appeared with counsel and testified at an administrative hearing before ALJ L. Harris. R. 72–91. A vocational expert ("VE") also testified. R. 91–101. On October 20,  ALJ Harris held a supplemental hearing at which Sabrena and another VE testified. R. 32–48.

ALJ Harris issued an unfavorable decision on December 11, 2017. R. 19–26. She first found that Sabrena met the Act's insured-status requirements through September 30 of that year, and that she had not worked since her alleged onset date. R. 21. Sabrena had a severe impairment

3

of "status-post multiple fractures," *id.*, including in the left shoulder and lumbar spine, *see* R. 22. Her left shoulder fracture did not meet or equal a Listing because, although she had restricted range of motion, pain, and abnormal imaging, no evidence showed that she could not perform fine or gross motor movements. R. 21–22 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02).

ALJ Harris then evaluated Sabrena's residual functional capacity ("RFC") and determined that she could perform "light" work[4] except:

> she was able to sit 4 hours, stand 2 hours, and walk 2 hours in an 8-hour workday. She could sit 30 to 45 minutes at one time and stand or walk 30 to 40 minutes at one time. She could frequently reach overhead and in all directions with the right upper extremity. She could push or pull frequently with the right upper extremity. She could not reach overhead with the left upper extremity. She could push or pull with the left upper extremity occasionally. She [was] right handed. She could occasionally operate foot controls with the right lower extremity. She could frequently operate foot controls with the left lower extremity. She could climb ramps and stairs occasionally, but she could not climb ladders, ropes, or scaffolds. She could not crawl, but she could balance, stoop, kneel, and crouch occasionally. She could work in an environment with humidity and wetness occasionally. She could work with dust, odors, fumes, and pulmonary irritants frequently. She could occasionally work in an environment with extreme cold, heat or vibrations. She could operate a motor vehicle occasionally.

R. 22. Based on this RFC finding and the VE's testimony at the third hearing, ALJ Harris concluded that Sabrena could not perform her past relevant work, but she could perform other occupations (office helper, marker, sales attendant) that offered a significant number of jobs in the national economy. R. 24–26; *see* R. 38–40. The Appeals Council denied Sabrena's request

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A person who can meet these relatively modest lifting requirements can perform "[t]he full range of light work" only if he or she can also "stand or walk for up to six hours per workday or sit 'most of the time with some pushing and pulling of arm or leg controls.'" *Neal v. Astrue*, Civ. No. JKS-09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010) (quoting 20 C.F.R. § 404.1567(b)); SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983).

for review, R. 1–4, thereby making ALJ Harris's written decision "the final decision of the Commissioner" denying her DIB claim, R. 1. This appeal followed.

III. Discussion

A.    *Summary*

In March 2014, Sabrena was in a motor vehicle accident and suffered a left humerus fracture and an L2 burst fracture. R. 501, 504; *see* R. 525, 527, 529. On March 17, Patrick Ireland, M.D., performed an "[i]nferior L1 and L2 decompressive lumbar laminectomy and bilateral medial undercutting facetectomies" and a "[p]osterior lateral fusion from L1–L3." R. 558. A few days later, Andrew K. Brown, M.D., performed an open reduction internal fixation of Sabrena's "comminuted left proximal humerus fracture." R. 555. In April, Sabrena had moderate mobility and strength deficits, and she started physical therapy. R. 744–52. At a follow-up visit with Dr. Ireland in May, she reported some back, hip, and leg pain but exhibited improved strength. R. 661–62. Sabrena also told Dr. Brown that she was using her left arm for activities around the house and taking care of her children. R. 633. On exam, she exhibited reduced range of motion in her left shoulder. *Id.*

In June, imaging of Sabrena's lumbar spine showed improvement without spinal or foraminal stenosis, R. 674–75; *see also* R. 861, and imaging of her left arm showed stable hardware, R. 878–79, 883–84. Sabrena reported back and left arm pain and right leg numbness, R. 635, 660–61, 725, 729, 731, 744, 861, but also reported that she walked daily, had improved strength and range of motion, and was full weightbearing with her left arm, R. 711, 733, 736, 861, 894. On exam, she exhibited decreased, but improving, range of motion and strength in her back, right leg, and left arm. R. 647, 660, 662, 734, 705, 737, 739, 748–50, 702, 891. Sabrena had "[m]oderate overall improvement in functional mobility" and "significantly improved range

5

of motion, strength, and mobility" by July. R. 705. Her providers prescribed Percocet, Oxycontin, Flexeril, Neurontin, and Vicodin patches. R. 507, 627, 633, 662; *see* R. 892, 889.

In April 2015, Sabrena started treatment with David Weiss, M.D. R. 899–902. She reported left shoulder pain and stiffness. R. 900. Dr. Weiss noted that she had positive Neer, Hawkins, O'Brien's, and impingement tests and reduced range of motion. R. 901. He assessed adhesive capsulitis and administered a cortisone injection in her left shoulder and biceps. *Id.* In May, Sabrena underwent surgery to remove the hardware from her left arm. R. 911. Sabrena continued to report shoulder pain, but also reported improved strength and range of motion. R. 900, 924, 928, 945. Her shoulder exams remained essentially the same. R. 903, 905, 927, 930, 945. Sabrena also reported back pain and right leg numbness. R. 938. On exam she exhibited improved strength, decreased lumbar range of motion with poor effort, and negative straight leg raise tests. R. 939–40. Her providers prescribed Oxycodone, Naproxen, and Amitriptyline. R. 861, 920, 927, 931.

In September, Sabrena started pain management treatment. She reported chronic back and left shoulder pain and radiculopathy to her right leg. R. 949. Neurontin, Oxycodone, and Naproxen helped her pain. R. 950. On exam, she had decreased range of motion in her left arm abduction, 4/5 strength in her left shoulder, normal strength in her right leg, a positive facet loading lumbar test, and tenderness to palpation in her left shoulder and paraspinal muscles. R. 953. At later visits, she continued to report pain, R. 957, 962, 968, and her exams remained unchanged, R. 960, 965, 971. Her providers prescribed Effexor, Baclofen, Zanaflex, Naproxen, and Neurontin which helped her pain. R. 953, 961, 966, 972, 1070. In September 2016, she began receiving trigger point injections. R. 977, 1070, 1073. On review for the state agency in September 2014, Wyatt Beazley, M.D., opined that Sabrena's history of fractures limited her to occasionally

6

lifting or carrying twenty pounds and frequently lifting or carrying ten pounds; standing or walking for four hours and sitting for six hours in an eight-hour workday; occasionally pushing and pulling with her left arm; frequently balancing and climbing ramps and stairs; and occasionally stooping, crawling, and climbing ladders, ropes, and scaffolds. R. 187–88. In February 2015, Richard Surrusco, M.D., affirmed Dr. Beazley's opinion, but added that Sabrena was limited to occasional overhead reaching with her left arm. R. 196–98.

In April 2017, ALJ Harris sought an independent medical opinion from Andrew D. Brown, M.D., an expert in physical and rehabilitative medicine. R. 1060–69. After reviewing Sabrena's records, Dr. Brown opined that her lumbar spine impairment did not meet or equal Listing 1.04 because the L2 fracture was stabilized without evidence of nerve root or spinal cord compression, and she did not exhibit constant motor loss, weakness, atrophy, reflex changes, or sensory loss. R. 1068 (citing R. 500–01, 503–04, 527, 537, 549–50, 558, 611–13, 617–18, 625, 627, 660, 662, 702, 721, 799, 805, 869, 939–40, 952, 959, 965, 971, 975, 1029). Her left humerus fracture did not meet Listing 1.02 because, although she had restricted range of motion, complaints of pain, and abnormal imaging, the medical records did not show that she could not perform fine or gross movements. R. 1067 (citing R. 500–01, 525, 530–31, 555, 611–13, 617–18, 633, 635, 646–47, 677, 702, 888, 891, 894, 899–901, 904–05, 908, 910, 912, 930, 947, 952, 959, 965, 971, 975, 1025; 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2)(c)). Dr. Brown opined that Sabrena could occasionally lift or carry twenty pounds and frequently lift ten pounds; sit for thirty to forty-minutes at a time and stand or walk for thirty to forty minutes at a time; and sit for four hours, stand for two hours, and walk for two hours in an eight-hour workday. R. 1061. She could frequently reach in all directions, push, or pull with her right arm, but never reach overhead with her left arm and only occasionally reach in other directions, push, or pull. R. 1062.

7

She could occasionally operate foot controls with her right leg and frequently operate foot controls with her left leg. *Id.* She could occasionally balance, stoop, kneel, crouch, and climb ramps and stairs, and she could never crawl or climb ladders, ropes, or scaffolds. R. 1063. She could have occasional exposure to humidity, wetness, extreme cold and heat, vibrations, and hazards like unprotected heights. R. 1064. She could have frequent exposure to pulmonary irritants and operate a vehicle fifty percent of the time. *Id.*

ALJ Harris briefly summarized Sabrena's testimony and her treatment history. R. 23–24. She found that Sabrena's "medically determinable impairment could reasonably be expected to cause [her] alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 23. Despite Sabrena's reported pain, the record showed "significant improvement in [her] pain and musculoskeletal range of motion" and conservative treatment consisting of pain medications and injections. R. 23–24 (citing R. 633, 705, 894, 939, 966, 977, 1070–77). ALJ Harris gave "great" weight to Dr. Brown's expert opinion because his findings were "generally consistent with the evidence of record." R. 24 (citing R. 1059–69). The ALJ's RFC matches Dr. Brown's opinion of Sabrena's specific impairment-related limitations.

B.  *Analysis*

Sabrena does not challenge any of the ALJ's factual findings. *See generally* Pl.'s Br. 1–4, ECF No. 16. Instead she argues that ALJ Harris violated her right to procedural due process by issuing a decision that relied solely on the third administrative hearing in which Sabrena did not present her full case. *Id*. at 2. In support of her argument, Sabrena asserts that the ALJ did not

mention the second administrative hearing or discuss any of the testimony or evidence from the second hearing. *Id.* Her argument is unavailing.

To prevail on a due process claim, the claimant "must establish that the Government is attempting to deprive her of a protected interest and that she did not have a 'full and fair' hearing." *Thornton v. Barnhart*, No. 5:05cv55, 2006 WL 759672, at *9 (W. D. Va. Mar. 21, 2006) (quoting *Perales*, 402 U.S. at 401–02). "An applicant for social security disability benefits has a property interest in those benefits protected by the Fifth Amendment." *Short v. Astrue*, No. 2:09cv119, 2010 WL 5665044, at *5 (N.D. W. Va. Sept. 9, 2010) (citing *Perales*, 402 U.S. 389), *adopted sub nom. Short v. Comm'r of Soc. Sec.*, 2011 WL 318689 (N.D. W. Va. Jan. 28, 2011); *see Flatford v. Chater*, 93 F.3d 1296, 1304 (6th Cir. 1996) ("In light of *Perales*, all appellate courts to date, including this one, have not questioned whether a social security claimant has a property interest in benefits for which he or she hopes to qualify."). Therefore, the remaining question is whether the claimant was given a full and fair hearing. To answer that question, a three-part balancing test is applied: (1) "the private interest that will be affected," (2) the risk of an erroneous deprivation . . . through the procedures used," and (3) the probable value any additional procedural safeguards would provide. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Thornton*, 2006 WL 759672, at *9.

Sabrena argues that the ALJ ignored the exhibits and testimony she presented at the second administrative hearing and relied solely upon the limited testimony she presented at the third hearing. Pl.'s Br. 2. In her brief procedural history, ALJ Harris only identified the third administrative hearing that occurred in October 2017. R. 19. Reading her decision as a whole, however, it is clear that she discussed and considered the exhibits and testimony presented at both hearings. The exhibits admitted into evidence at the second hearing included 1A to 4A, 1B

9

to 17B, 1D to 5D, 1E to 14E, and 1F to 10F. R. 71. At the third hearing, ALJ Harris admitted those same exhibits, plus additional exhibits that had been received including 18B to 22B, 6D, 15E to 16E, and 11F to 14F. R. 35. All those exhibits were attached to the ALJ's decision, R. 27–30, and ALJ Harris explicitly cited evidence from exhibits 1F, 3F, 4F, 6F, 7F, 9F, 10F, 13F, and 14F in her decision. R. 23–24. An "ALJ is not required in [her] written decision to recount every piece of evidence." *Boston v. Barnhart*, 332 F. Supp. 2d 879, 890 (D. Md. 2004). Sabrena does not point to any evidence that was admitted at the second hearing but not the third, or any evidence that was not considered by ALJ Harris. Nor does she point to any evidence not considered by ALJ Harris that would change the outcome of her decision.

Additionally, ALJ Harris clearly considered Sabrena's testimony from the second hearing. In her summary of Sabrena's testimony, the ALJ noted that Sabrena "suffered a broken spine, shattered shoulder, and dislocated hip"; "was paralyzed after the accident"; and could not "feel from her hip to her knee." R. 23. She also noted that Sabrena testified she could "walk up to 20 minutes on a level surface and stand 5 to 10 minutes"; "sit for 20 to 25 minutes before her spine starts to feel like it [was] 'crushing down'"; and "shift positions or alternate between sitting and standing for about 10 to 15 minutes at a time." *Id.* Finally, the ALJ noted that Sabrena testified that she could not lift her left arm above her chest, had gained significant weight, and her medications made her fatigued. *Id.* Sabrena only testified to these limitations at the second hearing and did not mention them during the third hearing, so it is clear that ALJ Harris considered Sabrena's testimony from the second hearing. *Compare* R. 72, 75–76, 78–79, 84–85, *and* 89 (testifying at the second hearing), *with* R. 43–46 (testifying at the third hearing). Sabrena does not point to any piece of testimony from the second hearing that ALJ Harris did not consider.

10

Sabrena also appears to question the ALJ's reasons for convening a third hearing. A cursory review of the procedural history and the ALJ's questioning at the third hearing demonstrates that she convened the hearing to determine whether Sabrena could work with the limitations Dr. Brown, the independent medical expert, assessed. The second hearing occurred in March 2017. R. 68–102. ALJ Harris sent Dr. Brown a medical interrogatory in April and received his opinion a few days later. R. 1059–69. In October, ALJ Harris convened a third hearing that she called "supplemental" and offered Sabrena an opportunity to present evidence. R. 34, 42. ALJ Harris questioned the VE as to whether an individual with all the limitations assessed by Dr. Brown could work. *Compare* R. 38–40 (ALJ's hypothetical to the VE), *with* R. 1060–69 (Dr. Brown's opinion). ALJ Harris then gave Sabrena an opportunity to question the VE. R. 47–48.

Finally, Sabrena argues that the ALJ erred in not mentioning the VE's testimony from the second hearing. ALJ Harris's RFC determination adopted Dr. Brown's opinion entirely, *compare* R. 22, *with* R. 1060–69, and ALJ Harris presented this hypothetical to the VE at the third hearing, R. 38–40. During the second administrative hearing, ALJ Harris did not present a hypothetical that reflected her RFC determination; thus, the VE's testimony at the second hearing was not relevant. *See Bishop v. Astrue*, No. 2:09cv33, 2010 WL 2079669, at *4 (W.D. Va. May 24, 2010); *Chrisman v. Astrue*, 487 F. Supp. 2d 992, 1002 (N.D. Ill. 2007) (same). Furthermore, any error would be harmless because the hypothetical question posed to the VE in the third hearing was much more restrictive than that posed at the second hearing, and the VEs at both hearings testified that Sabrena could work under either hypothetical. *Compare* R. 93–96 (VE testimony at the second hearing), *with* R. 38–40 (VE testimony at the third hearing).

11

Sabrena does not identify any reversible error in ALJ Harris's RFC analysis or "point to any specific piece of evidence not considered by the [ALJ] that might have changed the outcome of [her] disability claim." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (emphasis omitted). Instead, she argues that she was denied procedural due process because the ALJ relied solely on evidence and testimony submitted at the third hearing and ignored all evidence and testimony from the second hearing at which she presented her full case. *See generally* Pl.'s Br. 1–4. A review of the record and the ALJ's decision, however, demonstrates that Sabrena was not denied procedural due process. She had a full and fair hearing at the second administrative hearing and an additional supplemental hearing at which she was given the opportunity to present evidence and question the VE. The ALJ relied on evidence and testimony submitted at both hearings in making her decision. ALJ Harris stated that she "considered all symptoms" and the evidence, R. 22–23, and "absent evidence to the contrary, [I] take her at her word." *Reid*, 769 F.3d at 865. Having determined that Sabrena's sole argument is meritless, I find that substantial evidence supports the Commissioner's decision.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge, **GRANT** the Commissioner's Motion for Summary Judgment, ECF No. 17, **AFFIRM** the Commissioner's final decision, and **DISMISS** this case from the Court's active docket.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, Chief United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: July 20, 2020

Joel C. Hoppe
United States Magistrate Judge